UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

MICHAEL GOINES,

                                          Plaintiff,    **FIRST AMENDED COMPLAINT**

-against-

THE CITY OF NEW YORK; COMMISSIONER RAYMOND W. KELLY; P.O. SUPERVISOR JOHN DOE # 1; P.O. GREGORY CLARKE, TAX I.D. 923673; and DENNIS RUSSO, TAX I.D. 926045, the individual defendants sued individually and in their official capacities,

07 CV 5448 (CM) (KNF)

ECF Case

                                          Defendants.

------------------------------------------------------------------------ X

## PRELIMINARY STATEMENT

      1.     This is a civil rights action in which plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and the laws of the State of New York. The claims arise from an incident, which occurred on or about July 25, 2006 in Brooklyn, New York. During the incident the City of New York and members of the New York City Police Department ("NYPD") subjected plaintiff to, among other things, false arrest and imprisonment, excessive force, malicious prosecution, an unlawful search and seizure, unlawful strip search, assault and battery, intentional and negligent infliction of emotional distress, retaliation for free speech, fabricated evidence, conversion of chattels, conspiracy, harassment, unconstitutional conditions of confinement, abuse of process, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice,

and custom. Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorneys' fees, and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1985(3), the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

3. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law. A notice of claim was duly filed on the City of New York within 90 days of the incident at issue, more than 30 days have elapsed since such filing, and the City has refused to settle plaintiff's claims. Moreover, this action was filed within one year and 90 days of the incidents that are the basis of this case.

4. Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in New York County. Moreover, the City of New York is subject to personal jurisdiction in the Southern District of New York.

## PARTIES

5. Plaintiff Michael Goines is a citizen of the State of New York, Kings County.

6. Defendant City of New York is a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7. Defendant Raymond W. Kelly is the Commissioner of the NYPD who violated plaintiff's rights as described herein.

8. Defendant P.O. John Doe # 1 is a New York City Police Supervisor, employed with the 79th Precinct located in Brooklyn, New York who violated plaintiff's rights as described herein.

9. Defendant Gregory Clarke is a New York City Police Officer, assigned Tax I.D. # 923673, employed with the 79th Precinct located in Brooklyn, New York who violated plaintiff's rights as described herein.

10. Defendant Dennis Russo is a New York City Police Officer, assigned Tax I.D. # 926045, employed with the 79th Precinct located in Brooklyn, New York who violated plaintiff's rights as described herein.

11. The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

12. The following is a summary set forth for the purpose of demonstrating and providing notice of plaintiff's claims against the defendants. Plaintiff has not set forth each and every fact concerning the incident(s) described below.

13. On July 25, 2006, at approximately 6:00 p.m., in the vicinity of Marcy Avenue between Veron and Willoughby Avenues, Brooklyn, New York, police officers assigned to the 79th Precinct located in Brooklyn, New York, namely P.O. Clarke and P.O. Russo, committed the following illegal acts against plaintiff as described below.

14. Plaintiff was walking home in the vicinity of Marcy Avenue between Veron and Willoughby Avenues, Brooklyn, New York with his friend Beatrice "Sandra" Clarke, after picking up Ms. Clarke's father's ashes from a funeral home.

15. Plaintiff and Ms. Clarke were coming from a restaurant, and while plaintiff was outside, defendants P.O. Clarke and P.O. Russo without either an arrest warrant, a search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime, approached plaintiff at the above stated location.

16. Once the defendants approached plaintiff, he was not free to disregard the officers' questions or walk away.

17. Defendants P.O. Clarke and P.O. Russo were dressed in plain clothes and asked plaintiff where he was coming from.

18. Plaintiff responded that he and Ms. Clarke were returning from Harlem, New York, where they just picked up Ms. Clarke's father ashes.

19. Plaintiff was carrying the ashes in a box and showed the box to the defendants. The box had clear markings that it had come from a funeral home.

20. Defendants P.O. Clarke and P.O. Russo asked plaintiff where else he had been, and plaintiff responded that he and Ms. Clarke had just left the restaurant.

21. Defendants P.O. Clarke and P.O. Russo asked plaintiff if he had drugs on him or if he had purchased or sold drugs, and plaintiff responded no to all these questions.

22. Defendants P.O. Clarke and P.O. Russo asked plaintiff if they could search him, and plaintiff said yes.

23. Defendants P.O. Clarke and P.O. Russo then conducted a pat frisk of plaintiff, searching his pockets and wallet, and found no narcotics, weapons, or contraband was a result of the search.

24. After the search, plaintiff asked defendants P.O. Clarke and P.O. Russo why they were harassing him, and they replied, do you think we are "targeting" or "singling" you out.

25. Plaintiff told the defendants that their conduct amounted to harassment.

26. Defendant then walked back to their unmarked police car and proceeded to enter the vehicle, not taking plaintiff into custody and allowing plaintiff to walk away.

27. Plaintiff then started to copy down the defendants' vehicle's license plate number and when the defendants saw this act, they left their car, and P.O. Russo said, "You think we're harassing you? Now you're going to jail for loitering."

28. While unlawfully taking plaintiff into custody, defendants P.O. Clarke and Russo, maliciously, gratuitously, and unnecessarily grabbed and slammed plaintiff's body onto the trunk of their unmarked vehicle, twisted plaintiff's arms, and placed excessively tight handcuffs on plaintiff's wrists. Those defendants who did not touch plaintiff, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

29. When plaintiff complained about the defendants' conduct, the defendants, in retaliation for plaintiff's free speech, became verbally abusive in the car, stating that they guaranteed that they would find controlled substances on plaintiff once they searched him at the precinct, even though they had no justification or lawful basis to subject plaintiff to any search.

30. The defendant then transported plaintiff to the 79th Precinct, where they subjected him to an illegal "thorough search" then an illegal non-private strip search without either an arrest warrant, a search warrant, probable cause, or reasonable suspicion to justify their actions. Indeed, plaintiff had been arrested for charges that did not involve the possession and/or sale or weapons, narcotics or contraband.

31. During the search, P.O. Russo repeatedly slammed plaintiff's boots against a wall, without any reason to do so, breaking the left boot's heel.

32. Thereafter, the defendants placed plaintiff in a holding cell.

33. While at Precinct, defendants P.O. Clarke and P.O. Russo repeatedly referred to plaintiff as "Groins" although they knew his surname name was "Goines."

34. Upon information and belief, defendant P.O. Clarke and P.O. Russo would have had plaintiff processed through Brooklyn Central Booking; however, Ms. Clarke arrived at the Precinct with plaintiff's mother, Phyllis Goines, who is employed by the New York State Division of Parole as a Parole Officer.

35. Ms. Goines demanded to know what had happened from P.O. Supervisor John Doe # 1, and obtained the names and tax identification numbers of P.O. Clarke and P.O. Russo.

36. P.O. Supervisor John Doe # 1 had supervised and approved of P.O. Clarke and Russo's conduct towards plaintiff at the 79th Precinct, including approving his unlawful arrest and strip search.

37. Realizing that Ms. Goines (who is peace officer under New York State law) was now a witness to their conduct, defendants P.O. Supervisor John Does # 1, P.O. Clarke and P.O. Russo issued a summons, rather than cause him to be taken to Central, and released plaintiff.

38. Accordingly, pursuant to a conspiracy the defendants, falsely and maliciously told the Kings County District Attorney's Office that plaintiff had committed a crime, and based on the officers' false allegations the Kings County District Attorney's Office decided to prosecute plaintiff under # 2006SK110115.

39. At his arraignment, in October 2006, Judge Yearwood dismissed the case against plaintiff in its entirety as legally insufficient.

40. On August 21, 2006 plaintiff filed a complaint against P.O. Clarke and P.O. Russo, with the Civilian Complaint Review Board, under CCRB # 200611634, and on April 25, 2007, the Board substantiated a charge against P.O. Russo, finding that he had abused his authority by strip-searching plaintiff and referred him for Command Discipline.

41. The individual defendants acted in concert committing these illegal acts against plaintiff.

42. Plaintiff did not resist arrest at any time during the above incidents.

43. Plaintiff did not engage in suspicious, unlawful or criminal activity prior to or during the above incidents.

44. The individual defendants did not observe plaintiff engage in suspicious, unlawful, or criminal conduct at any time prior to or during the above incidents.

45. At no time prior to or during the above incidents were the individual defendants provided with information or in receipt of a credible or an objectively reasonable complaint from a third person that plaintiff had engaged in suspicious, unlawful or criminal conduct.

46. The aforesaid events were not an isolated incident. Defendant Commissioner Raymond W. Kelly has been aware (from lawsuits, notices of claim and complaints filed with the Civilian Complaint Review Board) that many of the NYPD's officers are insufficiently trained on the proper way to use force, when to stop and frisk an individual, search an arrestee, strip search an arrestee and how to treat innocent and/or uninvolved individuals who are found in a location that is the subject an incident, investigation, or patrol.

Commissioner Raymond W. Kelly is further aware that such improper training has often resulted in a deprivation of civil rights. Despite such notice, Commissioner Raymond W. Kelly has failed to take corrective action. This failure caused the defendant police officers in the present case to violate the plaintiff's civil rights.

47. Moreover, Commissioner Raymond W. Kelly was aware prior to the incident that the defendant officers lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, Commissioner Raymond W. Kelly has retained these officers, and failed to adequately train and supervise them.

48. Further, in Shain v. Ellison, 273 F.3d 56 (2d Cir. 2001), the Second Circuit held that the Fourth Amendment to the United States Constitution prohibits officials from performing strip searches of pretrial detainees charged with misdemeanors or other lesser offenses unless there exists reasonable suspicion that the detainee is concealing a weapon or other contraband based on the crime charged, the particular characteristics of the arrestee, or the circumstances of the arrest.

49. Plaintiff was charged with a misdemeanor when he was strip searched at the 79th Precinct.

50. NYPD has completely ignored the Second Circuit's mandate in Shain by continuing to enforce its unlawful strip search policy.

51. Plaintiff was subjected to NYPD's unlawful policy of strip-searching newly arrested individuals.

52. As a result of defendants' actions plaintiff experienced personal and physical injuries (including injuries to his torso and wrists), pain and suffering, fear, an invasion

of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss (including attorney's fees).

## FEDERAL AND STATE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

53. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

54. The conduct of defendant officers, as described herein, amounted to false arrest and imprisonment, excessive force, malicious prosecution, an unlawful search and seizure, unlawful strip search, assault and battery, intentional and negligent infliction of emotional distress, retaliation for free speech, fabricated evidence, conversion of chattels, conspiracy, harassment, unconstitutional conditions of confinement, abuse of process, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.

55. The conduct of the defendant officers, as described herein, violated plaintiff's rights under 42 U.S.C. §§ 1983 and 1985(3), First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by committing false arrest and imprisonment, excessive force, malicious prosecution, an unlawful search and seizure, unlawful strip search, assault and battery, intentional and negligent infliction of emotional distress, retaliation for free speech, fabricated evidence, conversion of chattels, conspiracy, harassment, unconstitutional conditions of confinement, abuse of process, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.

56. Defendants acted under pretense and color of state law and their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his rights secured by 42 U.S.C. §§ 1983 and 1985(3), First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

57. As a direct and proximate result of the misconduct and abuse detailed above, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

58. The plaintiff is also entitled to receive punitive damages because defendants' actions were motivated by extreme recklessness and indifference to the plaintiff's rights.

**FEDERAL AND STATE CLAIMS AGAINST DEFENDANT KELLY**

59. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

60. Defendants Kelly is liable, in his official capacity, to plaintiff because: (1) he created and allowed to continue a policy or custom under which unconstitutional practices occurred, (2) he was grossly negligent in supervising subordinates who committed the wrongful acts, and (3) he exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring.

61. Upon information and belief, defendant Kelly was aware from notices of claim, lawsuits, complaints, and the NYPD's own observations, that the officers sued in the

present case were unfit to be police officers, and that it was highly likely that they would commit the acts alleged in the present case.

63. 62. Nevertheless, defendant Kelly exercised deliberate indifference by failing to take remedial action.

63. The aforesaid conduct by defendant Kelly violated plaintiff's rights under 42 U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by failing to retrain the defendant subordinate officers, failing to adequately discipline the defendant subordinate officers, failing to adequately investigate prior complaints against the defendant subordinate officers either at the facilities where the incidents occurred, or at Kelly's Headquarters located in New York, New York, and creating a culture where officers are encouraged to harass and assault those question their authority, and acting in manner which amounted to negligent hiring, training, monitoring and retention of incompetent employees, in violation of state law.

64. As a direct and proximate result of the misconduct and abuse detailed above, plaintiff experienced personal and physical injuries, pain and suffering, fear, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

65. The aforesaid conduct of defendant Kelly amounted to negligent hiring, training, monitoring and retention of incompetent employees, in violation of state law.

**FEDERAL AND STATE CLAIMS AGAINST
THE CITY OF NEW YORK**

66. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

67. The City of New York directly caused the constitutional violations suffered by plaintiff.

68. Upon information and belief, the City of New York was aware from notices of claim, lawsuits, complaints, and from NYPD's own observations, that the officers involved in the present case were unfit to be police officers, and that it was highly likely that they would commit the acts alleged in the present case.

69. Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action. The City of New York failed to properly train, retrain, supervise, discipline, monitor, and improperly utilized and retained these officers. Moreover, the City of New York failed to adequately investigate prior complaints against the officers and created a culture where officers can harass, assault citizens without consequence. Indeed, when citizens file complaints against officers, the City has a practice of failing to substantiate or address the complaint, even under circumstances where the complaint is corroborated and credible, and the account given by the officer is unworthy of belief.

70. The aforesaid conduct by the City of New York violated plaintiff's rights under 42 U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

71. Moreover, the aforesaid conduct by the City of New York amounted to negligent hiring, training, monitoring and retention of incompetent employees, in violation of state law.

72. Finally, under state law, the City of New York is responsible for its employees' actions under the doctrine of respondeat superior.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

    a.    Compensatory damages in an amount to be determined by a jury;

    b.    Punitive damages in an amount to be determined by a jury;

    c.    Costs, interest and attorney's fees;

    d.    Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:    New York, New York
               June 8, 2007

                                        MICHAEL O. HUESTON, ESQ.
                                        *Attorney for Plaintiff*
                                        350 Fifth Avenue, Suite 4810
                                        New York, New York 10118
                                        (212) 643-2900
                                        mhueston@nyc.rr.com
                                        By:

                                        _____
                                        MICHAEL OLIVER HUESTON (MH-0931)